# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

---

Sophal Prom,
     Petitioner,


    vs                          Case No. 1:07cv480
                                (Barrett, J.; Black, M.J.)


Warden, Ohio Reformatory
for Women,
     Respondent.

---

## REPORT AND RECOMMENDATION

---

Petitioner, a prisoner in state custody at the Ohio Reformatory for Women in Marysville, Ohio, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of counsel.  This matter is before the Court on the petition, respondent's return of writ with exhibits, and petitioner's "traverse" in reply to the return of writ with supplemental exhibit filed under seal.  (Docs. 2, 11, 26-28).[1]

### Factual And Procedural Background

On September 28, 2000, petitioner shot and killed a co-worker at a packaging plant in Fairfield, Ohio.  (*See* Doc. 11, Ex. 47, Tr. 27-28).  On October 6, 2000, the Butler County, Ohio, grand jury returned an indictment charging petitioner with one count of aggravated murder in violation of Ohio Rev. Code 2903.01(A) and attached firearm specification.  (*Id.*, Ex. 1).

---

[1] In her "traverse" brief, petitioner requested the scheduling of "oral arguments in this matter."  (Doc. 26, p. 25).  That request has been denied in a separate Order issued this date.

Petitioner entered a plea of not guilty by reason of insanity (NGRI).  (*Id.,* Ex. 2).  After hearings held to determine petitioner's competency to stand trial, the trial court entered an order on August 21, 2001 finding petitioner competent to stand trial and scheduling a trial date of December 17, 2001.  (*Id.,* Ex. 3; Ex. 47, Tr. 1-18).

1.  Prom I:  December 13, 2001 Guilty Plea

On December 13, 2001, petitioner withdrew her NGRI plea and entered a negotiated written plea agreement, in which she agreed to plead guilty to a reduced charge of murder with specification.  (*See id.,* Ex. 4; Ex. 47, Tr. 22).  At a hearing held the same date, the trial court accepted petitioner's guilty plea and sentenced petitioner to consecutive prison terms of fifteen (15) years to life for the murder offense and three (3) years for the firearm specification.  (*Id.,* Ex. 47, Tr. 36-37, 39-40; *see also id.,* Ex. 5).

Petitioner's trial counsel filed a timely notice of appeal to the Ohio Court of Appeals, Twelfth Appellate District.  (*Id.,* Ex. 6).  On May 14, 2002, new counsel for appeal purposes filed a brief pursuant to *Anders v. California,* 386 U.S. 738 (1967), stating that he was "unable to find any meritorious argument that can be made on behalf of appellant" and requesting the court "to make an independent assessment as to whether there is a meritorious issue for appellant."  (*Id.,* Ex. 7).[2]

On August 26, 2002, the Ohio Court of Appeals issued a decision, finding on independent review of the record "one error prejudicial to appellant's rights in the proceedings in the trial court."  (*Id.,* Ex. 9, p. 2).  Specifically, the court found that the "trial court's sentencing entry order[ing] appellant to pay court-appointed counsel fees" constituted prejudicial error; the court reversed the "portion of

_____

[2]  In the *Anders* brief, appellate counsel specifically directed the court to review whether petitioner "possessed the necessary mental capacity to knowingly, intelligently and voluntarily enter into a guilty plea, given her history of incompetence and given that she was on five different medications at the time of her guilty plea; whether the trial court properly made a finding that [petitioner] had been restored to competence. . .; whether [petitioner], a native of Cambodia and who has been in the country for twenty years, had the capacity to understand the proceedings, given her difficulty with the English language; and whether the trial court adequately explained [petitioner's] rights . . . that she was waiving as a result of her guilty plea, given her history of mental instability and given her unfamiliarity with the English language." (Doc. 11, Ex. 7).

appellant's sentence ordering h[er] to pay attorney fees," and remanded the matter for "a determination pursuant to R.C. 2941.52(D) regarding appellant's ability to pay court-appointed attorney fees."  (*Id.,* pp. 2-3).

With the assistance of new counsel from the Ohio Public Defender's Office, petitioner appealed to the Supreme Court of Ohio.  (*Id.,* Ex. 10).  In the memorandum in support of jurisdiction filed October 10, 2002, counsel asserted four propositions of law including the following claims: (1) "post-release control does not attach to a sentence for murder;" (2) "a guilty plea to murder is involuntary when the trial court tells the defendant she will be subject to post-release control, not parole, upon release;" and (3) "[a]ppellate counsel is ineffective when he fails to raise winning issues."  (*See id.,* Ex. 11).

On January 15, 2003, the Supreme Court of Ohio declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question."  (*Id.,* Ex. 13).  However, apparently in response to concerns raised in the memorandum in support of jurisdiction, the trial court issued a *nunc pro tunc* "Amended Judgment Of Conviction Entry" on November 4, 2002 deleting the reference to post-release control that was contained in the original sentencing entry of December 13, 2001.  (*See id.,* Ex. 14).

In the meantime, on November 25, 2002, counsel from the Ohio Public Defender's Office filed with the Ohio Court of Appeals, Twelfth Appellate District, an application for delayed reopening of petitioner's direct appeal under Ohio R. App. P. 26(B), alleging that petitioner's appellate attorney was ineffective for failing to file a brief raising the following assignments of error:

1.  A guilty plea is involuntary when the trial court tells the defendant she will be subject to post-release control, not parole, upon release.

2.  The trial court erred by misinforming Ms. Prom about post-release control.

(*Id.,* Ex. 15).

The Ohio Court of Appeals granted the application for reopening "on the limited questions of:  (1) whether the representation by prior appellate counsel was deficient and whether appellant was prejudiced by that deficiency; and (2) whether

3

the trial court's incorrectly advising appellant that she would be subject to post-release control, rather than parole, upon release from prison rendered her guilty plea involuntary." (*Id.,* Ex. 18).

After allowing the parties an opportunity to file briefs in the reopened appeal, the Ohio Court of Appeals issued a decision on September 29, 2003, which was amended on reconsideration on December 8, 2003, vacating petitioner's conviction and sentence and remanding the case for further proceedings based on the determination that the trial court had committed reversible error in informing petitioner "that she was subject to post-release control as a consequence of a conviction for Murder." (*Id.,* Exs. 22, 26).[3] In the December 8, 2003 amended opinion, the court reasoned in pertinent part:

> The trial court erred when it told Prom that it would impose the post-release control as a part of Prom's sentence, and when it later imposed post-release control as a part of Prom's sentence. The provision appears in a judgment entry of conviction the court journalized on December 13, 2001. Realizing its error, on that same date the court entered an <u>Amended Judgment Entry of Conviction Nunc Pro Tunc</u> that contains no post-release control requirement.

> Crim.R. 36 permits correction of clerical mistakes in judgments. It is questionable whether the variance between the two journalized sentencing entries represent[s] a correction of a mere clerical error. Prom's complaint is not about that, however. Prom's complaint is that the court's oral advice at the plea hearing misled her to an extent that her guilty plea was rendered involuntary.

> Pleas of guilty or no contest are valid only when they are knowing, intelligent, and voluntary. *Boykin v. Alabama* (1969), 395 U.S. 238.... Failure on any of those points renders a resulting conviction

---

[3] In its original decision, the Ohio Court of Appeals declined to rule on the ineffective assistance of appellate counsel claim, which it determined had been rendered moot. (Doc. 11, Ex. 22, p. 9). However, on reconsideration, the court sustained the assignment of error on the ground that "appellate counsel's performance was deficient and [petitioner's] ineffective assistance of counsel claim is with merit." (*Id.,* Ex. 26, p. 9).

unconstitutional. . . .

Crim.R. 11(C) was adopted to ensure that pleas of guilty or no contest are valid. . . .

One of the consequences of a guilty plea is the penalty that may be imposed. . . .  In that connection, Crim.R. 11(C)(2) requires the court to first address a defendant who would enter a guilty plea, personally, and determine, inter alia, that the defendant is making the plea "with (an) understanding of . . . the maximum penalty involved. . . ."

Compliance with Crim.R. 11(C)(2) need not be exact; substantial compliance is sufficient. . . .  The test is whether an error the court committed so prejudiced the defendant that she would not have pled guilty had the error not been made. . . .  Substantial compliance is not shown where the court gives the defendant incorrect information on what the maximum sentence may be. . . .

R.C. 2929.14(F) provides that a post-release control requirement is a part of an offender's "sentence[.]" . . .  The sentence is, of course, a penalty.  Crim.R. 11(C)(1)(a) requires the court to determine that the "defendant is making the plea . . ., with (an) understanding . . . of the maximum penalty involved."

By erroneously advising Prom that post-release control requirements are mandatory in her case, and what terms of imprisonment might be imposed for their violation, the court inadvertently understated the maximum penalty that might apply to any re-incarceration after Prom's release.  If Prom is ever released, the more onerous potential penalties of parole arising from Prom's life sentence instead apply if she is later re-incarcerated.  That's not to say that the court was required to give Prom any advice at all concerning parole; it wasn't, and courts rarely if ever do.  However, by delving into these inapplicable post-release control penalties in a mistaken effort to comply with Crim.R. 11(C), as it implicates the statutory requirements of post-release control, the court inadvertently created a Crim.R. 11(C) problem.

5

> Substantial compliance might arise out of an omission, but it's far more difficult to find with respect to an affirmative misstatement, especially one that understates the penalty involved. . . . That is underscored where the error occurred both in the written plea waiver and the court's oral colloquy with the defendant, both of which happened here.
>
> We find that the trial court erred when it accepted Prom's guilty plea when, in consequence of the court's erroneous advice to her concerning post-release control, Prom necessarily was unaware of the maximum penalty to which she was exposed by her plea.

(*Id.,* Ex. 26, pp. 5-8) (state case citations omitted).

2. Prom II:  Remand Proceeding

On remand, the matter was set for a "plea or trial setting" on December 19, 2003.  (*See id.,* Ex. 40, p. 2).  On December 17, 2003, with the assistance of new counsel, petitioner filed a NGRI notice and requested that "Dr. Kathleen J. Burch be designated by the Court, at Defendant's cost, to conduct an evaluation to determine the defendant's sanity at the time of the alleged offense."  (*Id.,* Ex. 30; Ex. 40, p. 2).

Apparently, the trial court granted petitioner's request, ordering that petitioner "be examined by a psychologist of her choice" and rescheduling the matter for a "plea or trial setting" on February 27, 2004.  (*See id.,* Ex. 40, pp. 2-3). Dr. Burch, who examined petitioner in January 2004, determined that petitioner, "although mentally ill, did not meet the definition of NGRI."  (*See id.,* p. 3).  A hearing was held on February 27, 2004, where "it became apparent that a plea agreement would not be reached, and the matter was set for trial on May 24, 2004." (*See id.*, p. 3).

On or about April 23, 2004, petitioner next filed a motion for continuance of the trial date, a motion to enforce the prior plea agreement, and a motion for change of venue.  (*See id.,* Ex. 48, Tr. 3; *see also* Doc. 26, Ex. B).  A hearing was held on May 6, 2004, wherein the prosecutor stated that "at this point in time, the State is unwilling to make [the] same [plea] offer because there has been a change in circumstances," which stemmed from Dr. Burch's assessment on remand that

6

petitioner was sane at the time of the offense.  (Doc. 11, Ex. 48, Tr. 25).

After hearing the parties' arguments, the trial court overruled petitioner's motion to enforce the original plea agreement;[4] the court reasoned in pertinent part:

> . . . .[W]hen this Court accepted the [original] plea, we felt that there was a plea agreement between the State of Ohio and the defense, and that everyone understood the plea agreement, and the terms and the sentence that would be imposed, which was going to be 18 years to life.
>
> And Ms. Prom at that time was represented by counsel who had at this point . . . handled over ten capital murder cases in this county and other counties when that guilty plea was accepted and when the discussions took place with Ms. Prom.  We imposed a sentence based upon an agreement that we believed was entered into between the State of Ohio and the defense and this Court accepted that because it was a reduction from aggravated murder to murder, and we allowed that guilty plea to take place.
>
> So the question isn't whether there was an agreement.  This Court found that the parties had entered into an agreement where Ms. Prom would plead guilty.  But it didn't stop there.  Subsequent, as you said, anybody can appeal even a guilty plea, and [Ms. Prom] chose to do so.
>
> She chose to do so with the advice and the representation of the Ohio [P]ublic [D]efender's [O]ffice who for whatever reason felt that it was somehow in her best interest to take this case to the Court of Appeals, the Ohio Supreme Court and back to the Court of Appeals to obtain a reversal of the sentence and agreement you now say that she never wanted to vacate to begin with, and that somehow she felt that . . . she was going to get medical treatment or hospitalization if she allowed them to handle this appeal for her.

---

[4] At the hearing, the trial court also overruled petitioner's motion for change of venue, but granted her motion for continuance of the trial date to the extent that the trial was rescheduled to commence June 28, 2004.  (Doc. 11, Ex. 31; Ex. 48, Tr. 34, 41-43).

7

But the arguments that were done in the Court of Appeals, and the decision that was made by the Court of Appeals brings us to this day and this hearing. The Court of Appeals says Prom's complaint is not about that. They are talking about Criminal Rule 36 permits correction of a clerical mistake in judgment. It is questionable whether the variance between the two journalized sentencing entries represents a correction of a mere clerical error because it was corrected. The post-release control was corrected. And it said parole.

But that wasn't good enough at that point because the appeal was still pursued even though it was corrected.

Prom's complaint is not about that, however[.] Prom's complaint is that the Court's oral advice at the plea hearing misled her . . . to an extent that her guilty plea was rendered involuntary. Pleas of guilty or no contest are valid only when they are knowing, intelligent and voluntary. Failure on any of these point[s] renders a resulting conviction unconstitutional.

And so they decided based upon the argument presented on Ms. Prom's behalf by her counsel, having sustained . . . three assignments of error, which was an ineffective assistance of appellant's counsel by the way, they reached their second opinion, the trial Court's order accepting appellant's plea of guilty is reversed and the judgment of conviction and sentence imposed thereon are vacated.

This cause is remanded for further proceedings consistent with this opinion. Didn't say to be remanded to be resentenced or to reaccept the guilty plea. It said the entire process, judgment of conviction, sentence imposed thereon are vacated.

It's the Court's finding that we cannot and do not enforce an agreement that Ms. Prom chose to appeal, and a sentence that she chose to appeal when she, through her counsel, appealed this matter to the Court of Appeals, and the Supreme Court, and back to the Court of Appeals alleging that her plea was not done knowingly and intelligently and voluntarily, which implies that had she been given this information, she wouldn't have entered this guilty plea.

8

> And the Court of Appeals reversed and said this matter comes back to square one. There is no agreement at this point to enforce. That agreement was obviated when she went to the [C]ourt of [A]ppeals and asked that this all be set aside.
>
> And when she came back here, she proceeded to prepare for trial, and this Court certainly is in the position to set this and has set this for trial. And we are not now in a position, and do not make a finding that there is a plea agreement to be enforced. We cannot and will not make that order that the State of Ohio now allow Ms. Prom to again enter the same plea that she entered into before that she now says that she always wanted and didn't want to set aside.

(*Id.,* Tr. 28-32).

Next, on June 22, 2004, petitioner's new trial counsel filed motions with the Ohio Court of Appeals, Twelfth Appellate District, for stay of the trial court proceedings and for clarification or reconsideration of the state appellate court's decision in the reopened appeal. (*Id.*, Exs. 27, 28). On June 24, 2004, the Ohio Court of Appeals denied the motions on the ground that it lacked jurisdiction to consider them; the court explained that the application for reconsideration was not filed in a timely manner "within ten days of the announcement of the court's decision" as required by Ohio R. App. P. 26(A), and that there was "no need to clarify its decision." (*Id.,* Ex. 29).

On June 28, 2004, the date petitioner's trial was scheduled to commence, petitioner's counsel made an oral motion for a continuance, which was denied. (*See id.,* Ex. 40, p. 3; Ex. 49, Tr. 3-38). At that point, petitioner withdrew her NGRI plea and, as journalized on June 29, 2004, entered a plea of no contest to the aggravated murder charge with firearm specification. (*Id.,* Exs. 33-34; Ex. 49, Tr. 38-64). In an entry filed July 8, 2004, petitioner was sentenced to consecutive prison terms of twenty (20) years to life for the aggravated murder offense and three (3) years for the firearm specification. (*Id.,* Ex. 35).

Petitioner's counsel filed a timely appeal to the Ohio Court of Appeals, Twelfth Appellate District, asserting the following assignments of error:

 1. Appellant's due process rights under Section 10, Article 1, of the

Ohio Constitution and under the Fifth and Fourteenth Amendments to the United States Constitution were violated when the trial court denied Appellant's reasonable request for a second continuance of the trial date in an aggravated murder case, when Appellant had not finished preparing her defense, due to no fault of her own.

2. Appellant's due process rights under Section 10, Article 1, of the Ohio Constitution and under the Fifth and Fourteenth Amendments to the United States Constitution are violated when the trial court refuses to enforce a plea agreement between the parties that was valid and enforceable. In the alternative, Appellant's due process rights under the state and federal constitutions are violated when the prosecuting attorney and/or trial court punish Appellant for exercising her right to appeal by refusing to honor and/or enforce a previously entered plea agreement between the parties.

3. Appellant's previous guilty plea to a reduced charge of Murder and a gun specification was not invalid due to the trial court's error in advising Appellant she was entitled to post-release control, in light of new case law from the U.S. 6th Circuit Court of Appeals and it was error for the trial court to refuse to recognize said case law and not simply re-take Appellant's guilty plea to the reduced charge. (*Id.,* Exs. 36, 37).

On May 9, 2005, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment of conviction and sentence. (*Id.,* Ex. 40).

Petitioner's counsel sought leave to appeal to the Supreme Court of Ohio based on the same claims that had been presented as assignments of error on direct appeal. (*See id.,* Exs. 41, 42). On October 5, 2005, the state supreme court denied petitioner leave to appeal and dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 44).[5]

---

[5] It appears from the court's docket records that petitioner filed a motion for reconsideration with the Supreme Court of Ohio on October 17, 2005, which was denied on December 14, 2005. (*See* Doc. 11, Ex. 54).

3.  Federal Habeas Proceeding

The same counsel who represented petitioner at both the trial and appellate levels in the state remand proceedings commenced the instant federal habeas action on petitioner's behalf.  In the petition, which was filed on March 12, 2007,[6] petitioner alleges three grounds for relief:

**Ground One:**  Violation of 5th and 14th Amendment Right to Due Process for failure to enforce a valid plea agreement.

**Supporting Facts:**  The Parties entered into a plea agreement where Petitioner would plea[d] guilty to murder and a gun specification.  The trial court incorrectly advised the petitioner that she was eligible for post-release control, not parole.  The Ohio State Public Defender appealed the case and eventually obtained a decision ordering Petitioner re-sentenced.  The State of Ohio refused to agree to the prior plea agreement and insisted on a plea to the indictment.  The trial court agreed and refused to enforce the prior plea agreement.

**Ground Two:**  Violation of 5th and 14th Amendment Right to Due Process in denying a reasonable request for continuance of the trial date.

**Supporting Facts:**  Counsel for Petitioner needed a continuance of the first trial date because his expert witness on mental illness was unavailable.  Thereafter, counsel for Petitioner was unable to finish preparation for trial as many state witnesses had moved and the defense was still trying to locate them for interviews and to provide exculpatory evidence on the issue of Petitioner's mental state at the time of the killing.  Moreover, there were three new witnesses disclosed one business day before trial.  There was a new Autopsy report served on defense counsel the week before trial.  Witness preparation needed to be completed and was delayed due [to] a

_____

[6]  The petition initially was filed in the Eastern Division of this federal judicial district. On June 20, 2007, the case was transferred to this Court for all further proceedings.  (*See* Docs. 9, 10).

complicated motion that was filed with the state court of appeals after remand and of which the state and trial court were well aware. Finally, defense counsel made the trial court and state aware, well before the second trial date[,] that he had co-counsel who would be assisting at trial and said co-counsel would be out of town with his wife and children on vacation during the time of trial.  Petitioner requested [a] little more than one month to finish preparation for trial. This request was denied.

**Ground Three:**  Violation of 5th and 14th Amendment right to Due Process when the trial court failed to follow U.S. Court of Appeals for the 6th Circuit case law on the issue of the enforcement of a plea agreement in contradiction to the requirements of Stare Decisis.

**Supporting Facts:**  During the pendency of Petitioner's case, the U.S. Court of Appeals for the 6th Circuit issued its decision in *McAdoo v. Elo,* 365 F.3d 487 (6th Cir.[])[, *cert. denied,* 543 U.S. 892 (2004),] which stated that a trial court's error in discussing parole or parole eligibility in taking a guilty plea does not negate the validity of . . . the guilty plea.  The identical "error" was found in Petitioner's case.  The trial court was made aware of the *McAdoo* case, but refused to follow its precedent on the issue of the binding nature of the plea agreement contract.

(Doc. 2, pp. 6-9).

Respondent does not argue, nor does it appear from the record, that the petition is barred from review on statute of limitations grounds.  It also appears that petitioner fairly presented her constitutional claims for relief to the state courts. Therefore, the Court will proceed to address the merits of each claim in light of the arguments presented by respondent in the return of writ.

# OPINION

## A.  Petitioner Is Not Entitled To Habeas Relief Based On The Claims Alleged In Grounds One And Three Of The Petition Challenging The Trial Court's Refusal To Enforce The Original Plea Agreement

In Grounds One and Three of the petition, petitioner essentially challenges the trial court's refusal on remand to enforce the parties' original plea agreement, which permitted petitioner to plead guilty to the reduced charge of murder with firearm specification.  (Doc. 2, pp. 6, 9).

The Ohio Court of Appeals was the last state court to issue a reasoned decision addressing the specific claims alleged in Grounds One and Three; the court overruled the claims of error as follows:

> Appellant's second assignment of error alleges that the trial court erred by not enforcing the plea bargain that appellant originally agreed to before her plea was vacated on appeal.  Appellant argues that the 2002 plea agreement is valid and enforceable, in spite of this court's decision in *Prom I*.

> In support of this contention appellant directs our attention to *United States v. Sandoval-Lopez* (C.A. 9, 1997), 122 F.3d 797.  In *Sandoval-Lopez,* several defendants pled guilty to the use of a firearm in the commission of a drug-trafficking offense, and in return had other charges dismissed.  In a petition pursuant to Section 2255, Title 28, U.S. Code, they successfully attacked their convictions on the basis that the conduct to which they had pled guilty was no longer a crime. The federal district court then found that the plea agreement did not prohibit the collateral attack on the convictions under Section 2255, and consequently did not result in a breach of the plea agreement. The appellate court noted that the defendants challenged only the validity of their convictions and did not attack the plea agreements themselves.

> Appellant asserts that *Sandoval-Lopez* "runs parallel" to the present matter, and that appellant "did not breach her contract by appealing the illegal part of her sentence."  Contrary to her assertion, appellant did not appeal her sentence, but rather the voluntary nature of her plea, and we find appellant's citation to *Sandoval-Lopez* misplaced. Her appeal sought to set aside her guilty plea, and this court granted the relief sought.

13

Contrary to appellant's argument, we find that it is reasonably well-established that "'when a defendant repudiates the plea bargain *** by successfully challenging [her] conviction on appeal there is no double jeopardy (or other) obstacle to restoring the relationship between the defendant and state as it existed prior to the defunct bargain.'" *United States v. Moulder* (C.A. 5, 19[9]8), 141 F.3d 568, 571, quoting *Fransaw v. Lynaugh* (C.A. 5, 1987), 810 F.2d 518, 524-525. See, also, *Hardwick v. Doolittle* (C.A. 5, 1977), 558 F.2d 292, 301. Ohio courts have likewise held that "being convicted of the original charge and receiving a greater sentence is a chance that one takes when [one] seeks to withdraw from a plea agreement containing a state-amended lesser charge." . . .

Nor are we persuaded by appellant's argument that the state's refusal to offer the same plea agreement is the result of vindictiveness for her successful appeal. Appellant's prior appeal resulted in the invalidation of her plea, and the reinstatement of the charge for which she was originally indicted. Where the underlying purpose of the plea agreement is frustrated, the prosecution may, "without explanation, refile charges against a defendant whose bargained-for guilty plea to a lesser charge has been withdrawn or overturned on appeal, provided that an increase in the charges is within the limits set by the original indictment." *Moulder* at 572. After her conviction was reversed on appeal, appellant entered a plea of NGRI to the charge of aggravated murder for which she was indicted. This charge was within the limits set by the original indictment, and we do not find that proceeding under this charge was the result of vindictiveness. Appellant's second assignment of error is overruled.

In her final assignment of error, appellant urges us to overrule our decision in *Prom I* and reinstate the prior plea agreement. She also contends that the trial court should have disregarded this court's decision in *Prom I* based on subsequent federal case law.

The "law of the case" doctrine provides that the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels. . . . The doctrine is considered to be a

14

rule of practice rather than a binding rule of substantive law and will not be applied so as to achieve unjust results. . . .  However, the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution. . . . "In pursuit of these goals, the doctrine functions to compel trial courts to follow the mandates of reviewing courts." . . .

Consequently, on remand, a trial court is bound to adhere to the appellate court's determination of the applicable law. . . .  The doctrine is applicable to subsequent proceedings in the reviewing court as well as the trial court.  "Thus, the decision of an appellate court in a prior appeal will ordinarily be followed in a later appeal in the same case and court." . . .  Absent extraordinary circumstances, such as an intervening decision by the Ohio Supreme Court, an inferior court has no discretion to disregard the mandate of a superior court in a prior appeal in the same case. . . .

We thus conclude that the trial court was without discretion to disregard this court's decision in *Prom I*.  We further find that no extraordinary circumstances exist which would permit this court to disregard its prior decision vacating appellant's plea, conviction, and sentence.

Appellant argues that the United States Sixth Circuit Court of Appeals' recent decision in *McAdoo* . . . is controlling in this matter, and provides such an extraordinary circumstance.  We find appellant's argument unpersuasive for two reasons.  First, the decisions of federal courts constitute persuasive authority only and are not binding on this court. . . .

Second, we find the facts and reasoning of *McAdoo* inapplicable to the present case.  *McAdoo* involved federal habeas corpus review of a defendant's claim that his plea was not knowing and voluntarily entered because he didn't understand the nature of a life sentence. The *McAdoo* court deferred to the Michigan state court's ruling that the only misstatement by the trial court occurred at sentencing, which would have had no effect on the voluntariness of the defendant's plea.

15

> We consequently find appellant's reliance on that case misplaced. Because appellant has failed to demonstrate extraordinary circumstances that would permit us to question the finality of our former decision, the assignment of error is overruled.

(Doc. 11, Ex. 40, pp. 6-11) (state case citations omitted).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S. 685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

16

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

Here, as the Ohio Court of Appeals reasonably determined, petitioner was not merely seeking to challenge her sentence when she sought to overturn her guilty plea both on direct appeal to the Supreme Court of Ohio and in the state reopening proceedings. As the state appellate court pointed out in its decision in the reopened appeal and as the trial court pointed out on the record in refusing to enforce the original plea agreement on remand (*see* Doc. 11, Ex. 26, p. 6; Ex. 48, Tr. 30), the sentencing error in fact was corrected when the trial court entered the *nunc pro tunc* amended judgment entry deleting any reference to petitioner's placement in post-release control upon her release from prison. (*See id.,* Ex. 14). Despite this correction, petitioner continued to challenge her murder conviction and sentence on the ground that her guilty plea was rendered involuntary when the trial court misinformed her at the plea hearing that she would be subject to post-release control, not parole, upon release. (*See id.,* Exs. 15, 18).

In the reopened appeal initiated by petitioner, the Ohio Court of Appeals found merit to petitioner's claim that the trial court's "affirmative misstatement" at that plea hearing, which "understated the maximum penalty that might apply to any re-incarceration after [petitioner's] release" and which was underscored in the written plea waiver, misled petitioner into entering the guilty plea. (*Id.,* Ex. 26, pp. 7-8). For this reason, the court vacated petitioner's murder conviction and sentence and remanded the case to the trial court. Therefore, it was reasonable for the trial court to conclude on remand that the Court of Appeals' ruling effectively voided the plea agreement, bringing the "matter . . . back to square one" with "no agreement at th[at] point to enforce." (*See id.,* Ex. 48, Tr. 31-32).

The Supreme Court has never held that a criminal defendant who succeeds in having his or her guilty plea vacated is nevertheless entitled to enforcement of the plea agreement as opposed to reinstatement of the original charges. In her "traverse" brief, petitioner cites *Santobello v. New York,* 404 U.S. 257 (1971), as

17

supporting her claim for relief.  (*See* Doc. 26, p. 4).  *Santobello*, however, is inapposite to the extent that the prosecutor was found to have breached the plea agreement in that case, whereas in this case, it was petitioner herself who successfully sought to void the parties' plea bargain.

In any event, *Santobello* actually supports the State's position that the state courts' refusal on remand to enforce the original plea agreement does not implicate constitutional concerns.  In *Santobello,* the Court refrained from determining the appropriate remedy for the state prosecutor's breach of the plea agreement. Instead, the Court remanded the case to the state courts for consideration, stating:

> The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, . . . or whether, in the view of the state court, the circumstances require granting the relief sought by petitioner, i.e., the opportunity to withdraw his plea of guilty.

*Id.* at 499.  The Court further noted that "[i]f the state court decides to allow withdrawal of the plea, the petitioner will, of course plead anew to the original charge" contained in the indictment.  *Id.* at n.2.

Therefore, under *Santobello,* it appears that this Court lacks supervisory authority to specify the appropriate remedy for the constitutional violation, which the Ohio Court of Appeals found had occurred as argued by petitioner in the reopened appeal, and that the state courts acted well within their discretionary authority in refusing on remand to enforce the invalidated plea agreement and instead allowing the State to pursue the original aggravated murder charge contained in the indictment.  *Cf. Martin v. Burke,* 234 F.3d 1269 (table), No. 99-1866, 2000 WL 1597945, at **3-4 (6th Cir. Oct. 17, 2000) (unpublished) (and cases cited therein) (holding that the state court, as opposed to the federal habeas court, "has the authority to choose among the various possibilities" for remedying a state prosecutor's violation of a plea agreement).[7]

---

[7] *See also McPherson v. Barksdale,* 640 F.2d 780, 781-82 (6th Cir. 1981) (refusing to grant habeas relief based on petitioner's claim that he was entitled to specific performance of an unkept plea bargain, because under *Santobello,* the federal court lacked authority to grant such

In another case, *Ricketts v. Adamson,* 483 U.S. 1 (1987), the Supreme Court examined the consequences of a breach of a plea agreement by the defendant as opposed to the prosecution.  *Ricketts* is more analogous than *Santobello* to the case-at-hand to the extent that the plea agreement in this case was repudiated not by the prosecution, but at petitioner's behest.  In *Ricketts,* the defendant was allowed to plead guilty to a reduced charge of second-degree murder in exchange for his promise to testify against other parties involved in the crime.  *See id.* at 3-4. When the petitioner refused to testify at the retrial of the other parties, the state supreme court vacated his second-degree murder conviction and reinstated the original charge of first-degree murder.  *See id.* at 4-7.  The petitioner thereafter was convicted of first-degree murder and sentenced to death.  *Id.* at 7.

The petitioner filed a federal habeas petition, claiming that the Double Jeopardy Clause barred his prosecution for first-degree murder.  In rejecting this claim, the Supreme Court noted that "the construction of the plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law."  *Id.* at 5-6 n.3.  Deferring to the state supreme court's finding that "the plea agreement 'by its very terms waives the defense of double jeopardy if the agreement is violated,'" *see id.* at 5-6, the Supreme Court held that the petitioner's subsequent breach of the plea agreement removed the double jeopardy bar to his prosecution on the indictment's first-degree murder charge.  *See id.* at 8-13.

In so holding, the Court relied on a prior case, *United States v. Scott,* 437 U.S. 82 (1978), where the trial judge had granted the defendant's motion to dismiss two counts of the indictment due to pre-indictment delay.  *Ricketts,* 483 U.S. at 10-11.  The *Ricketts* Court reasoned as follows in reliance on *Scott*:

> This Court held that the Double Jeopardy Clause did not bar the Government from appealing the trial judge's decision, because "in a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he was accused, suffers no injury cognizable under the Double Jeopardy Clause. . . ." [*Scott*, 437 U.S.] at 98-99. . . .  The Court reasoned further that "the

relief).

Double Jeopardy Clause . . . does not relieve a defendant from the consequences of his voluntary choice." The "voluntary choice" to which the *Scott* Court referred was the defendant's decision to move for dismissal of two counts of the indictment, seeking termination of that portion of the proceedings before the empaneled jury, rather than facing the risk that he might be convicted if his case were submitted to the jury. The respondent in this case had a similar choice. He could submit to the State's request that he testify at the retrial, and in so doing risk that he would be providing testimony that pursuant to the agreement he had no obligation to provide, or he could stand on his interpretation of the agreement, knowing that if he were wrong, his breach of the agreement would restore the parties to their original positions and he could be prosecuted for [the more serious charge of] first-degree murder. Respondent chose the latter course, and the Double Jeopardy Clause does not relieve him from the consequences of that choice."

*Id.* at 11.

Similarly, here, petitioner requests the Court to relieve her from the consequences of her voluntary choice to move for the reversal of her murder conviction on the ground that her guilty plea to the reduced charge was involuntarily obtained. As in *Ricketts,* in so choosing, petitioner risked the possibility of reinstatement of and conviction on the more serious charge of aggravated murder. Although *Ricketts* is not directly on point to the case-at-hand, it certainly does not support petitioner's position that she is entitled to enforcement of the original plea agreement after she successfully challenged its validity in the reopened appeal. *Cf. Bullock v. Jones,* No. 1:04cv556, 2006 WL 1663010, at *11 (W.D. Mich. June 15, 2006) (unpublished) (holding that *Ricketts* "gives no support to the proposition that a criminal defendant who first breaches a plea agreement can nevertheless insist upon its enforcement against the prosecution," and that "[i]n fact, *Ricketts* suggests the opposite").

Petitioner cites *United States v. Sandoval-Lopez,* 122 F.3d 797 (9th Cir. 1997), as supporting her contention that the State remained bound by the terms of the parties' plea bargain and could not reinstate the aggravated murder charge contained in the original indictment. However, as the Ohio Court of Appeals

20

reasonably concluded (*see* Doc. 11, Ex. 40, p. 7), petitioner's reliance on *Sandoval-Lopez* is "misplaced."

In *Sandoval-Lopez,* the Ninth Circuit found that the defendants had not breached or repudiated their plea agreements when they successfully moved to vacate their convictions for use or carrying of firearms because of a change in the law, which rendered the conduct to which they had pleaded guilty no longer criminal. *See Sandoval-Lopez,* 122 F.3d at 798-802. In so ruling, the court stated:

> It is important that in the present case the defendants challenged only the validity of their convictions on the gun counts and did not attack the plea agreements themselves. Defendants sometimes bring collateral attacks on the plea agreements *qua* plea agreements, by claiming that their pleas were not "knowing," or "voluntary," or were otherwise defective. Such attacks are directed at the entire agreement, and if successful, may render the entire agreement void or voidable. Had the defendants brought that type of challenge, and had the district court determined that their claims were valid, the proper remedy might have been to vacate or allow withdrawal of the guilty pleas and to reinstate the dismissed charges. . . . In such case, the government might have legitimately asserted that the defendants repudiated the plea agreements.

*Id.* at 802 (citing *Taylor v. Kincheloe,* 920 F.2d 599, 601, 605-06 (9th Cir. 1990), and *United States v. Barker,* 681 F.2d 589, 592-93 (9th Cir. 1982)).

In this case, as the Ohio courts reasonably found, petitioner did not merely attack her sentence, but rather challenged the plea agreement itself by claiming that her guilty plea was not voluntarily made. In sustaining petitioner's assignment of error challenging her guilty plea conviction, the Ohio Court of Appeals essentially determined that the entire plea agreement was "void or voidable." The court remedied the matter by vacating petitioner's guilty plea and remanding the case to the trial court with no plea agreement in effect that could be enforced. Therefore, *Sandoval-Lopez* is inapposite.[8]

---

[8] It is further noted that the undersigned could find no case supporting any claim that petitioner had a constitutional right to enforcement of the prior plea bargain following remand after her guilty plea was vacated by the Ohio Court of Appeals. Indeed, the Sixth Circuit and

In her third ground for relief, petitioner contends that the prior plea agreement is enforceable because in *Prom I,* the Ohio Court of Appeals wrongly decided to vacate petitioner's guilty plea conviction.  Petitioner contends that under the Sixth Circuit's decision in *McAdoo v. Elo,* 365 F.3d 487 (6th Cir.), *cert. denied,* 543 U.S. 892 (2004), which was decided during the pendency of the remand proceedings, her initial guilty plea should have been upheld as constitutional.

The undersigned agrees with the state courts' determination that *McAdoo* is "inapplicable to the present case." (*See* Doc. 11, Ex. 40, p. 10).  First of all, unlike the petitioner in *McAdoo,* petitioner in the instant case seeks to have a decision reversed that she herself sought in the state courts.  In rejecting petitioner's contention that the trial court on remand should have overruled the Ohio Court of Appeals' decision in *Prom I* based on subsequent federal case law," the state appellate court relied in part on the "law of the case" doctrine, which provides that absent "extraordinary circumstances," the "decision of a reviewing court in a case remains law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." (*See id.,* pp. 9-10).  Because petitioner was the party who sought and obtained the ruling she now seeks to reverse in light of *McAdoo,* it was reasonable for the Ohio Court of Appeals to refuse to find extraordinary circumstances existed for overturning its decision in petitioner's favor in *Prom I.*

In any event, *McAdoo* is distinguishable from the case-at-hand.  As the Ohio Court of Appeals pointed out in rejecting this contention (*see id.,* p. 10), in contrast to the instant case, no misstatements were made in *McAdoo* regarding the

---

other courts have been unanimous in rejecting such an argument raised in analogous contexts. *See, e.g., Hampton v. United States,* 191 F.3d 695, 703 n.4 (6th Cir. 1999); *United States v. Spearman,* 166 F.3d 1215 (table), No. 96-1887, 1998 WL 840870, at *4-5 (6th Cir. Nov. 17, 1998) (unpublished), *cert. denied,* 527 U.S. 1039 (1999); *United States v. Moulder,* 141 F.3d 568, 571 (5th Cir. 1998) (and cases cited therein) (quoting *Fransaw v. Lynaugh,* 810 F.2d 518, 524-25 (5th Cir.), *cert. denied,* 483 U.S. 1008 (1987)); *United States v. Bunner,* 134 F.3d 1000, 1005 (10th Cir.); *Mosiurchak v. Senkowski,* 839 F.Supp. 1035, 1039 (S.D.N.Y. 1993); *McGee v. Higgins,* No. CIV-06-807-R, 2007 WL 2822748, at *6 & n.9 (W.D. Okla. Sept. 27, 2007) (unpublished); *cf. United States v. Warda,* 285 F.3d 573, 579-80 (7th Cir. 2002).

possibility of parole during the plea colloquy, which otherwise reflected petitioner's voluntary, knowing and intelligent agreement to a life sentence.  *See McAdoo,* 365 F.3d at 494-97.

Moreover, in addressing the petitioner's ineffective assistance of counsel claim, the Sixth Circuit recognized in *McAdoo* that "giving erroneous advice about parole may constitute deficient performance," because "[a]ffirmative misstatements about parole possibilities are more objectively unreasonable than failure to inform the defendant about the parole possibilities." *Id.* at 499.  The court stated:  "When defense counsel grossly misinforms a defendant about details of parole and the defendant relies on that misinformation, the defendant may have been deprived of his constitutional right to counsel." *Id.* (citing *Strader v. Garrison,* 611 F.2d 61, 65 (4th Cir. 1979), and *Meyers v. Gillis,* 142 F.3d 664, 667 n.2 (3rd Cir. 1998) (where the court noted that "while a defendant does not have a constitutional right to be provided with parole eligibility information prior to entering a plea, any information that is provided by defense counsel must be accurate")).

In *McAdoo,* the Sixth Circuit indicated that defense counsel may well have performed deficiently if, as alleged by the petitioner, counsel had incorrectly advised petitioner that he would receive parole and thus at most would only have to serve twenty years of his life sentence. *Id.*  The Sixth Circuit concluded, however, that petitioner had not demonstrated that counsel was ineffective under the applicable two-part test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984), because he failed to show "that there is a reasonable probability that, but for counsel's error[], he would not have pleaded guilty and would have gone to trial." *Id.*

Contrary to petitioner's contention, *McAdoo* does not mandate the reversal of the Ohio Court of Appeals' *Prom I* decision.  The *Prom I* court found merit to petitioner's claim that her guilty plea was involuntary because she was misled into entering the plea by affirmative misstatements made at the plea hearing, and in the written plea agreement, about her eligibility for post-release control, as opposed to parole, on her release from prison.  *McAdoo* does not prohibit such a holding, and, indeed, suggests that a guilty plea may be vacated as unconstitutional based on misstatements made by the trial court and/or defense counsel regarding parole release, which are relied on by the defendant in deciding to enter the plea.

Accordingly, in sum, petitioner is not entitled to relief based on the claims alleged in Grounds One and Three of the petition challenging the trial court's refusal to enforce the original plea agreement in the remand proceedings.  The state courts' adjudication of these claims neither is contrary to nor involves an unreasonable application of clearly-established Supreme Court precedent, and is not based on an unreasonable determination of the facts in light of the record evidence.

### B.  Petitioner Is Not Entitled To Relief Based On The Claim Alleged In Ground Two Challenging The Trial Court's Denial Of Her Second Motion For Continuance Of The Trial Date

In Ground Two of the petition, petitioner alleges that she was denied due process when the trial court denied her request for continuance of the trial, which was presented orally on the record on June 28, 2004, the date the trial was scheduled to commence.  (Doc. 2, pp. 7-8).  Petitioner contends that a continuance was necessary because her counsel was unable to complete preparation by June 28, 2004 due to problems in locating state witnesses who had moved; the disclosure of three new witnesses one day before trial; a new autopsy report that was served on defense counsel the week before trial; co-counsel's vacation schedule, which conflicted with the trial; and delays in witness preparation caused by the "complicated motion that was filed [on petitioner's behalf] with the state court of appeals after remand."  (*Id.*).

On remand from the Ohio Court of Appeals after petitioner's guilty plea conviction and sentence were vacated in the reopened appeal, the trial court set an initial "plea or trial setting" date of December 19, 2003.  (*See* Doc. 11, Ex. 40, p. 2).  When petitioner evidenced an intention to proceed to trial by filing a NGRI notice and request for an evaluation of her sanity at the time of the offense, the trial court rescheduled the "plea or trial setting" to February 27, 2004.  (*Id.,* pp. 2-3).

The expert personally requested by petitioner to conduct the sanity evaluation determined in January 2004 that petitioner "did not meet the definition of NGRI."  (*Id.,* p.3).  Apparently in light of this new information, the prosecution was unwilling to extend the same plea offer to petitioner, and the parties were unable to reach a plea agreement at the February 27, 2004 hearing.  Therefore, at that time, the court scheduled the matter for trial on May 24, 2004.  (*Id.*; *see also* Doc. 11, Ex. 48, Tr. 25).

24

Nearly two months later, on April 23, 2004, petitioner's counsel filed a motion to continue the trial.  (*Id.,* Ex. 48, Tr. 3).  At a hearing held on May 6, 2004, the trial court and counsel engaged in an extensive discussion about the propriety of a continuance at such a late juncture.  (*See id.,* Tr. 34-44).

The court expressed concern at that hearing about granting counsel's request given that the "matter was set for trial sometime ago" without any mention being made of setting a date "in coordination with some attorney who's not mentioned and is not counsel of record."  (*Id.,* Tr. 34, 36).  Moreover, the prosecutor objected to the continuance, stating in pertinent part:

> Judge, we are ready for May 24th.  That was the date we set back in February. . . .  My recollection of a conversation that we had on that date specifically the Court and myself and [defense counsel] was that we were picking that date, but we would continue . . . to try to resolve the case without a trial.  However, if we were unable to do that, we would have that May 24th date available or we would be ready to go on that date.

> I have been preparing all along and still trying to resolve it and still preparing at the same time and getting my witnesses ready.  And I'm getting everything lined up, so that we can be ready to proceed on the 24th.

> . . . . However, if this Court feels that it's in the interest of this case, and in protecting the defendant's rights that we continue this matter, you know, we would be understanding of that.

> And I would say this, though, that the family would like to see this case resolved as would the law enforcement agency as would the State, and we would like to see it resolved sooner rather than later.  And it's been hanging around way too long. . . .

(*Id.,* Tr. 38-39).

The trial court stated that it was "not going to get in the middle of any plea negotiation" between the parties, but did express that it was unlikely an agreement would be reached given the "entirely different positions" taken by the two sides.

25

(*Id.,* Tr. 40).  Nevertheless, the court allowed the defense an extra month to prepare for trial and rescheduled the trial to June 28, 2004.  (*Id.,* Tr. 40-41)  In so ruling, the court emphasized to counsel:

> I'm going to set it a month, and that gives everybody – you [have] time to get your expert, and the family doesn't have to wait for everybody to get this case tried.  And I will tell you why I am going to do this. . . .  I want you to understand.  I booked out a full week of my[] docket which is very, very busy.  I put off setting other cases for the week of May24th.  And I cannot now fill that week with criminal trials that need to be tried because I purposely did not use that week, so I now have a full week that I cannot fill with criminal trials that need to be tried because I have held this trial date until I got a motion to continue it last week.
>
> I also am not going to subject this family to another long period of time while we wait to get this case ready for trial.  June 28th is a week that I can vacate another trial, and I will set if for that date.

(*Id.,* Tr. 41).

When defense counsel responded by stating that he would be out of state "the entire month of July," the court replied: "I'm not going to wait until August to try this case."  (*Id.,* Tr. 41-42).

On June 28, 2004, the date the trial was scheduled to commence, petitioner's counsel requested another continuance in order to adequately prepare for trial.  (*Id.,* Ex. 49, Tr. 3-14).  The prosecutor "vehemently" objected, and specifically responded to the reasons that had been asserted in support of petitioner's request for continuance.  (*See id.,* Tr. 16-26).

The trial court then proceeded to rule on petitioner's motion, first setting out the lengthy procedural background of the case from the time petitioner entered her original guilty plea on December 13, 2001 through the hearing on May 6, 2004, which resulted in the continuance of the trial from May 24 to June 28, 2004.  (*See id.,* Tr. 29-32).  The court continued:

> And so we set this trial date for June 28th, 2004 and indicated that this

26

case would go to trial absent some intervention by the Court of
Appeals because the defendant indicated that there would be motions
and pleadings filed in the Court of Appeals shortly after the Court's
ruling on May 6th.

And this Court indicated that absent a stay by the Court of Appeals,
this case would go to trial on June 28th.  This Court neither
encouraged [n]or discouraged the filing of pleadings in the Court of
Appeals.  That's a decision for the defendant to make.

And the defense apparently filed those pleadings last week, Monday
or Tuesday of June 22nd with a final decision on June 24th.  This Court
personally spoke with counsel for the defendant on June 25th on our
way back from a conference and indicated that there w[ere] 60 jurors
that had been ordered, and this case would be going to trial on June
28th.

Previous counsel in this case is an experienced lawyer. . . .  At no time
have we in any way been informed that Mr. Howard [petitioner's prior
counsel] has interfered with or been uncooperative in providing any
information that he has in his files or was he requested to provide
witness statements or any other possible exculpatory evidence that he
would have in his files.

I have heard that the investigator contacted the other investigator, but
I have not heard one word that anybody made a direct attempt to
contact Mr. Howard and ask for his input or his information or if the
witness[es]' statements were in his file or whether he had them
because if that would have occurred, my experience with Mr. Howard
would be that would have been turned over immediately, and anything
else that he could do to accommodate, he would have done[;] nor have
we had any pleadings filed in this case indicating an inability to
contact witnesses, an inability to find witnesses, an inability to
interview witnesses, nor has there been any indication that anyone
contacted the employer to find out whether any of the witnesses were
still at this point employed by the employer.

I don't have a time frame on when the investigator contacted the prior

investigator, whether it was within the last week, the last month, or the last three months, nor do I have any indication of why the expert at this point isn't ready to go to trial to testify since this Court made it clear that on June 28th we would be trying this case.

There are two new witnesses that were listed and we will not allow them to testify. . . .  They will be excluded because of their late identification.  The other witnesses are and were well known and should have been easily known.  There has been no indication to this Court that there has been any problem with discovery or preparation or any inability to go forward until Friday of this week when the Court learned that the defense would be asking for a continuance on Monday.

There are 60 jurors sitting upstairs waiting . . . to come down here to hear this case and there are numerous witnesses who have now been subpoenaed for this trial.  And there . . . could not have been any misunderstanding that this case would go to trial on June 28th.  And this Court indicated that at all times that it would go to trial absent a stay from the Court of Appeals.

And the Court of Appeals apparently . . . overruled a motion for stay as well as all of the other motions.

. . . I cannot comment on whether the motion for stay la[i]d out a number of reasons why the matter should be stayed, but the Court of Appeals in their ruling apparently overruled that request for a stay.  We previously granted a continuance in this case from the original trial date that was set for May 24th, and we did that on May 6th, which allowed an additional almost 60 days to get ready for trial.

At that point in time, it was well known that . . . there was no agreement between either side that there would be a plea agreement worked out.  So there was no issue that this case was not going to trial.

It is within the discretion of this Court to allow a continuance for good cause shown, but it's also within the discretion of the Court to deny a

continuance when it would be inappropriate to allow the continuance. We have considered all of the factors including the preparation for trial, and the scheduling orders that this Court has made, and the expectation that this case would go to trial on this date, and the fact that a jury was called in, and the fact that witnesses are now prepared to go forward in this case, the fact that we have had no motions indicating an inability to be prepared for trial or any problems with that trial preparation until this morning or at the very [earli]est on Friday, June 25th.

Based upon what we just placed in the record, the Court is overruling the defendant's motion for continuance, and we will exclude [two persons] as witnesses in this case, but the matter will proceed today for trial.

(*Id.,* Tr. 33-38).

The Ohio Court of Appeals, which was the last state court to issue a reasoned decision addressing petitioner's claim on the merits, overruled petitioner's assignment of error challenging the trial court's decision on direct appeal.  (*Id.,* Ex. 40).  The state appellate court made findings of fact, which are presumed correct under 28 U.S.C. § 2254(e)(1),[9] and ruled in relevant part as follows:

The decision whether to grant or deny a continuance is within the sound discretion of the trial court and should not be reversed on appeal absent an abuse of that discretion. . . .  An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. . . .

While no "mechanical formula" exists for determining whether a trial

---

[9] Specifically, 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless petitioner rebuts the presumption by "clear and convincing evidence."  Petitioner has neither cited nor presented any evidence to rebut the Ohio Court of Appeals' factual findings quoted herein.  Therefore, she has not shown that such findings are erroneous.

29

court has abused its discretion in denying a motion for a continuance, the Ohio Supreme Court has utilized a "balancing test which takes cognizance of all the competing considerations" present in a particular case. . . .  When evaluating a request for a continuance, a court should note the length of the delay requested; whether other continuances have been requested and received; the convenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; and other relevant factors depending on the unique facts of each case. . . .  A reviewing court must weigh the potential prejudice to the defendant against the trial court's "right to control its own docket and the public's interest in the prompt and efficient dispatch of justice." . . .

Upon reviewing the record, we do not find that the trial court's decision was arbitrary, unreasonable or unconscionable.  When granting appellant's first request for a continuance, the trial court impressed upon the parties that June 28 would be a firm trial date. Appellant's counsel objected to the date, noting he would be out of town during the month of July.  The prosecutor opined that the trial would only take three days, however appellant's counsel insisted that the trial would last a full week.  In response, the trial court offered to set the matter for the week of June 14.  However, appellant's counsel declined the offer, and agreed that the matter could be heard for a week, beginning on June 28, and finishing by July 2.

Appellant's counsel requested a second continuance on June 28, the day the matter was set for trial.  In support of the requested continuance, counsel noted that he would be out of town for the month of July; an investigator would be out of town the first two weeks of July; co-counsel, who had not yet filed a notice of appearance, would be on vacation until late August; the defense had difficulty locating witnesses recently disclosed by the state; additional time was needed to prepare Dr. Burch whom the defense would call as an expert witness; and motions for clarification and reconsideration filed with the appeals court had delayed counsel's trial preparation.

In denying the requested continuance, the trial court remarked that the

30

witnesses were "well known and should have been easily known" to appellant. The trial court noted that the earlier continuance had been granted in part, because Dr. Burch was unavailable to attend the trial set for May 24, and that appellant had been granted additional time in which to prepare her for trial. The trial court noted that there could not have been any misunderstanding that the matter would go to trial on that day. Further, the trial court found that any more delay would substantially interrupt the court's docket, and would inconvenience the 60 jurors waiting to be impaneled and the numerous witnesses subpoenaed for trial. In order to avoid any prejudice to appellant, the trial court ruled that the state would not be allowed to call any witnesses who had not been timely disclosed to appellant.

Given these circumstances, we find that the trial court did not abuse its discretion in denying appellant's request for a continuance. Appellant's counsel had been provided time to prepare for trial and the trial court excluded recently disclosed state's witnesses, averting prejudice to appellant. The trial court did not abuse its discretion in determining that the public interest in seeing the matter justly concluded within a reasonable time, together with the inconvenience to jurors, witnesses, and the court, outweighed any prejudice to appellant. . . .

(*Id.,* pp. 3-6) (state case citations omitted).

As an initial matter, it appears that the Ohio Court of Appeals relied on state law in assessing whether or not the trial court abused its discretion in denying petitioner's second request for a continuance. To the extent petitioner contends the state courts erred under state law in refusing to reschedule the trial to a later date than June 28, 2004, her claim is not cognizable in this federal habeas corpus proceeding. A federal court may review a state prisoner's habeas corpus petition only on the ground that the challenged confinement violates the Constitution, law or treaties of the United States and not "on the basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984).

To the extent petitioner alleges a federal constitutional violation, the undersigned recognizes that the Constitution guarantees to criminal defendants a "meaningful opportunity to present a complete defense." *California v. Trombetta,*

31

467 U.S. 479, 485 (1984); *see also Mackey v. Dutton,* 217 F.3d 399, 407 (6th Cir. 2000) ("The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations.") (quoting *Chambers v. Mississippi,* 410 U.S. 284, 294 (1973)), *cert. denied,* 531 U.S. 1087 (2001).

The right to present a defense, however, may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process," *United States v. Scheffer,* 523 U.S. 303, 308 (1998), and "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel," *Morris v. Slappy*, 461 U.S. 1, 11 (1983). In *Morris,* the Supreme Court stated:

> Trial judges require a great deal of latitude in scheduling trials. Not the least of their problems is assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.

*Morris,* 461 U.S. at 11-12 (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589 (1964)); *see also Foley v. Parker,* 488 F.3d 377, 389 (6th Cir. 2007) ("Denial of a continuance rises to the level of a constitutional violation only if it is so arbitrary as to violate due process."), *cert. denied,* No. 07-10002, 2008 WL 760513 (U.S. May 27, 2008).

As the Ohio Court of Appeals recognized in addressing petitioner's claim under state law, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process." *Ungar,* 376 U.S. at 589. Rather, the "answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Id.*

The Sixth Circuit has considered the following factors in determining whether a criminal defendant was deprived of due process by the denial of a motion for continuance: "the diligence of the defense in interviewing witnesses and

32

procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony." *Mackey,* 217 F.3d at 408 (quoting *Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir. 1981)).  Courts (including the Sixth Circuit) have cited additional factors to be considered, which include those that were weighed by the Ohio Court of Appeals in the instant case–i.e., the length of the requested delay; whether other continuances were requested and granted; the balanced convenience or inconvenience to the litigants, witnesses, counsel, and the court; whether the requested delay was for legitimate reasons; whether the defendant contributed to the circumstance which gave rise to the request for a continuance; the complexity of the case; and whether the denial of a continuance resulted in identifiable prejudice to the defendant's case.  *See, e.g., Wilson v. Mintzes,* 761 F.2d 275, 281 (6th Cir. 1985) (and cases cited therein).

Because "[n]o absolute rule can be articulated as to the minimum amount of time required for an adequate preparation for trial of a criminal case," in order to obtain relief, the defendant must demonstrate that the denial of a continuance resulted in prejudice or, conversely, that a continuance would have added something to the defense.  *Montgomery v. Bagley,* 482 F.Supp.2d 919, 959-60 (N.D. Ohio 2007) (citing and quoting *United States v. Faulkner,* 538 F.2d 724, 729-30 (6th Cir.), *cert. denied,* 429 U.S. 1023 (1976)); *see also Foley,* 488 F.3d at 389 (holding that the petitioner must demonstrate that the denial of a continuance actually prejudiced the defense); *United States v. Moreno,* 933 F.2d 362, 371 (6th Cir.) (same), *cert. denied,* 502 U.S. 895 (1991).

In this case, the undersigned concludes that the trial court's denial of petitioner's second motion for continuance was neither unreasonable nor arbitrary and thus did not rise to the level of a due process violation.

As the Ohio Court of Appeals reasonably found, petitioner's counsel on remand was provided ample time to prepare for trial by June 28, 2004 after filing an appearance in the case in December 2003.  The undersigned defers to the state courts' finding that the witnesses "were well known and should have been easily known" to petitioner for trial preparation purposes.  Therefore, the argument that a second continuance should have been granted due to counsel's inability to locate witnesses is unavailing.

Indeed, as the trial court reasoned in denying petitioner's motion for continuance, information needed to prepare for trial already had been obtained by petitioner's prior trial counsel, who was an experienced attorney.  The undersigned defers to the trial court's judgment based on personal experience that if contacted by the defense, petitioner's prior counsel would have immediately "turned over" all documents in his case file and also would have provided input and shared information gleaned during the discovery and investigation conducted early on in the case before petitioner entered her guilty plea to the reduced murder charge with firearm specification.

Moreover, as the trial court further emphasized, although petitioner's counsel knew by February 27, 2004 that the parties were unable to reach a plea agreement and that the case therefore would proceed to trial, he never filed any pleadings indicating an inability to contact witnesses; nor did he even assert such an argument at the May 6, 2004 hearing which resulted in a continuance of the trial from May 24 to June 28, 2004.  On May 6, 2004, when petitioner was granted the continuance to June 28, nearly two months remained available for counsel to contact witnesses and otherwise prepare for trial.  The trial court stated that counsel never indicated there was "any problem with discovery or preparation or any inability to go forward" until Friday June 25, 2004, with the trial scheduled to commence the following Monday.  Therefore, it was reasonable for the state courts to give little credence to petitioner's contention that a continuance was necessary due to problems in locating witnesses or otherwise preparing for trial.

Petitioner's counsel nevertheless contends that he did not have sufficient time to prepare a defense in response to the testimony of three new witnesses identified the day before trial or to the "new" autopsy report served on him the week before trial.  Any prejudice resulting from the belated identification of new witnesses, however, was averted when the trial court excluded the two witnesses, whose identities had not been previously disclosed to the defense, from testifying at the trial.  Moreover, it appears from the record that the "new" autopsy report served the week before trial actually contained "substantially the same material and . . . information" that had been provided to counsel in the "original discovery response" of May 5, 2004.  (*See* Doc. 11, Ex. 49, Tr. 19).

The undersigned is not persuaded by petitioner's argument that co-counsel's conflicting vacation schedule constituted a "compelling reason" for granting a second continuance of the trial date, particularly given that "co-counsel" neither

was identified nor ever entered an appearance in the case on petitioner's behalf.

Finally, the undersigned gives little weight to counsel's argument that he was unable to adequately prepare defense witnesses due to the delays caused by the "complicated motion[s]" he filed with the Ohio Court of Appeals on June 22, 2004, six days before the trial was to commence, seeking to stay the trial as well as for clarification and reconsideration of the state appellate court's decision in the reopened appeal.  At the hearing held seven weeks earlier on May 6, 2004, the trial judge expressly cautioned counsel that June 28, 2004 was a firm trial date, as he was "not going to subject this family to another long period of time while we wait to get this case ready for trial," and that he certainly would not "wait until August [when counsel returned from a month away in July] to try this case."  The trial court further expressed doubts about the success of any appeal filed by petitioner from the denial of her motion to enforce the original plea agreement and refused to budge from the June 28 trial date or to state that there was "just cause for delay" while petitioner pursued an appeal.  (*See* Doc. 11, Ex. 48, Tr. 43-45).

Counsel thus was made well aware that if petitioner were unsuccessful in obtaining relief from the Ohio Court of Appeals, the trial would commence as scheduled on June 28, 2004.  During the eight-week period following the May 6, 2004 hearing, counsel had ample opportunity to cover both bases, by pursuing the appeal motions, which the trial court stressed it had neither encouraged nor discouraged counsel to file, while also preparing for the trial.

As the state courts reasonably found, other relevant factors weighed against the granting of petitioner's second request for a continuance.  These factors include the lack of diligence by the defense in preparing for a trial that was placed on the court's docket in February 2004; the fact that petitioner had already been granted a continuance allowing for an additional month of trial preparation; that the requested continuance would have delayed the trial for over a month longer, until at least some time in August 2004; the interest of the State and the victim's family in obtaining closure of a case that had been pending for years by that point; inconvenience to the 60 potential jurors who were in the courthouse waiting to be impaneled, as well as the witnesses who had been subpoenaed to testify at the trial; and inconvenience to the court, which had already experienced a disruption in its docket when the trial that had been allotted a week of the court's time was continued from May 24 to June 28, 2004.

In addition, petitioner has not identified with specificity the witnesses or other evidence in her favor that could not be procured before the June 28, 2004 trial date.  Therefore, she has not shown that the denial of her second request for continuance resulted in prejudice or that a continuance would have added something to the defense.

Accordingly, in sum, the undersigned concludes that the trial court's decision to deny petitioner's request for continuance does not trigger constitutional concerns.  The decision was reasonably based on the court's consideration of "all the factors including the preparation for trial, . . . the scheduling orders that [had been] made, . . . the expectation that th[e] case would go to trial on [June 28, 2004], . . . the fact that a jury was called in, . . . the fact that witnesses are now prepared to go forward in this case, [and] the fact that we have no motions indicating an inability to be prepared for trial or any problems with that trial preparation until . . . at the very [earli]est on Friday, June 25th."  (*See* Doc. 11, Ex. 49, Tr. 37).  The undersigned, therefore, agrees with the Ohio Court of Appeals' determination that the trial court "did not abuse its discretion in determining that the public interest in seeing the matter justly concluded within a reasonable time, together with the inconvenience to jurors, witnesses and the court, outweighed any prejudice to [petitioner]."  (*Id.,* Ex. 40, p. 6).

Because the denial of petitioner's request for continuance was reasonable and thus did not rise to the level of a constitutional violation, petitioner is not entitled to relief based on the claim alleged in Ground Two of the petition.

### IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to any of the claims alleged in the petition because petitioner has failed to make a substantial showing of the denial of a constitutional right based on such claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken

in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis*. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).


Respectfully submitted,


Date: _8/28/08_____                    _s/Timothy S. Black_____
    cbc                                Timothy S. Black
                                       United States Magistrate Judge

J:\BRYANCC\2008 habeas orders\07-480promcase-aggmurder.vacatedGP-murder-seeksGPreinstatement.continuance.wpd

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

_____

Sophal Prom,
      Petitioner


     vs                        Case No. 1:07cv480
                                 (Barrett, J.; Black, M.J.)

Warden, Ohio Reformatory
for Women,
      Respondent


## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled action. Pursuant to Fed. R. Civ. P. 72(b), any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof.  Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections.  *See* Fed. R. Civ. P. 72(b).  A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal.  *See Thomas v. Arn,* 474  U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).